UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

O

CIVIL MINUTES - GENERAL

Case No. SA CV 10-0415 DOC
Criminal Case No. SACR 06-0076-DOC                                      Date: February 6, 2012

Title: SHAWN LARAY BELL v. UNITED STATES OF AMERICA

THE HONORABLE DAVID O. CARTER, JUDGE

|         Julie Barrera         |         Not Present         |
|:-----------------------------:|:---------------------------:|
|        Courtroom Clerk        |        Court Reporter       |

ATTORNEYS PRESENT FOR PLAINTIFFS:        ATTORNEYS PRESENT FOR DEFENDANTS:

NONE PRESENT                                                NONE PRESENT

PROCEEDING (IN CHAMBERS): ORDER DENYING PETITIONER'S WRIT OF HABEAS CORPUS

   Before the Court is pro se Petitioner Shawn Laray Bell's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255 ("Motion"). The Court finds this matter appropriate for decision without oral argument. Fed. R. Civ. P. 78; Local R. 7-15. After considering the moving, opposing, and replying papers, and for the reasons stated below, the Court hereby DENIES the Motion.

I.   BACKGROUND

   A.   BELL'S ARREST

On the evening of April 13, 2006, Petitioner Shawn Laray Bell ("Bell") was stopped by Sergeant Derek Cook ("Cook") of the Orange Police Department for making an illegal left turn. Mot. at 2 (Dkt. 1). Bell had one passenger in his car. *Id.* As Cook approached the car, he detected an odor of marijuana emanating from the vehicle. *Id.* Cook asked Bell about the smell, whereupon Bell admitted that he and his passenger had just smoked marijuana at a nearby restaurant. Mot. at Oct. 30, 2006, Cook Decl. ("Cook Decl.") ¶ 7. Bell then provided Cook with an ID card (he did not have a driver's licence), and when Cook ran Bell's information he discovered an outstanding warrant for Bell in San Bernardino County. Mot. at 2-3. The car Bell was driving was rented to his girlfriend. Opp'n at 5 (Dkt. 4).

When Cook returned to the car he asked Bell for permission to search the entire vehicle – including the trunk and engine compartment – and Bell consented.[1] Cook Decl. ¶ 12. It was at this point that Bell was arrested, handcuffed, and made to sit on the sidewalk with his passenger and others who had arrived to pick up the rented car. *Id.* ¶ 13. Officers then searched Bell's vehicle. *Id.* ¶ 14.

In the backseat, officers found a cigar box containing two marijuana cigarettes. *Id.* In the

---

[1] Bell vigorously contests this point throughout his Motion. He claims that he did not consent, or, failing that, that consent was coerced. Mot. at 3. Bell argued this position at trial, and the Court found against him, finding that he did consent. The Ninth Circuit affirmed this ruling, finding no abuse of discretion by the Court in making this determination. *See United States v. Bell*, 337 F. App'x 663, 664-65 (9th Cir. 2009). As will be addressed later, to the extent Bell relies on the contested issue of consent as a basis for his current Motion, the issue is moot and may not serve as a basis for the instant Motion.

trunk, the officers found a backpack.  *Id.*  The backpack contained several items: a loaded Smith & Wesson .38 caliber revolver, a loaded Clerke .32 caliber revolver, prescription pill bottles and paperwork with Bell's name on them, and a pair of sandals inscribed with what was later identified as gang insignia.  Opp'n at 6.  The backpack did not contain any items in the name of Bell's passenger.  *Id.* at 7.  When the officers found the backpack, they addressed the group seated on the sidewalk and asked to whom the backpack belonged.  Mot. at 6.  Bell was the only one to respond; he said "That ain't mine, that was already in there when we got the car."  *Id.*  Bell was then taken to the Orange Police Station and the vehicle was impounded.  *Id.* at 4.

Once at the station, Bell was Mirandized and waived his rights.  *Id.*  Bell was questioned extensively.  *Id.*  He told the officers that he had smoked marijuana that night and that the pill bottles and paperwork in the backpack were his.  Opp'n at 7.  When asked about the guns, Bell replied "I'm not going to tell you I'm not familiar with them, but I didn't put the bag in the car, and I didn't put those guns in the bag."  Cook Decl. ¶ 16.  Cook was also questioned about the insignia on the sandals; those insignia matched certain tattoos on Bell's body.  Opp'n at 7.  Bell told officers that the symbols on the sandals were gang insignia, and he had similar tattoos because he was a member of that gang.  *Id.*  No one else from the scene of the arrest was taken back to the station for questioning.  *Id.* at 7-8.

      **B.**    **BELL'S TRIAL**

On April 26, 2006, Bell was indicted and charged with a violation of 18 U.S.C. §

922(g)(1), felon in possession of a firearm.[2] Opp'n at 3.

On October 2, 2006, Bell's counsel filed a motion to suppress certain items of evidence. *Id.* Namely, Bell moved to suppress all evidence seized from the car, statements he made at the scene of the arrest, and statements he made to officers at the police station. Opp'n at 12. Bell moved to suppress the items retrieved from the vehicle on the grounds that either: (1) Bell did not consent to the search; (2) any consent given was obtained as a means of coercion; or (3) that there was no probable cause to search the trunk for marijuana. Mot. at 6. Bell argued that his statements at the scene of the arrest were inadmissable because he had yet to be Mirandized. *Id.* Bell argued that his statements at the police station were inadmissable because they were the fruits of an unlawful search. *Id.* The motion to suppress was heard the morning of trial, and Cook testified during the hearing. Opp'n at 13. The motion was denied. *Id.*

On October 10, 2006, Bell's counsel filed motions *in limine* to exclude certain items of evidence as improper and more prejudicial than probative under Federal Rules of Evidence 403 & 404(b). Opp'n at 3. Specifically, Bell moved to exclude evidence of the Clerke revolver, Bell's references to his gang membership, and the evidence of the marijuana cigarettes found in the car. *Id.* at 15. The Court heard the motions *in limine* the morning of the trial and denied them. *Id.*

---

[2]Bell was charged with only one count – in relation to the Smith & Wesson revolver – because the government decided that it would be difficult to prove that the Clerke revolver had traveled in interstate commerce. Opp'n at 6 n.2.

Bell's jury trial commenced on November 15, 2006. *Id.* at 3. In closing arguments, Bell's counsel asked the jury to consider why the government had not called Bell's passenger, nor Bell's girlfriend. Mot. at 9-10. The inference that his counsel attempted to draw was that the government had not called those witnesses because they would have testified that Bell did not possess the guns. *Id.* In response to this, the government reminded the jury that the defense also has subpoena powers. *Id.* at 10.

The trial concluded in one day and Bell was found guilty on the single count of the indictment. Opp'n at 3. On November 19, 2007, Bell was sentenced to 110 months in prison. *Id.*

Bell directly appealed his conviction to the Ninth Circuit. *Id.* His conviction was upheld in an unpublished decision issued on June 26, 2009. *See United States v. Bell*, 337 F. App'x 663 (9th Cir. 2009).

### C.     THE INSTANT MOTION

Bell filed the instant motion on April 6, 2010, pursuant to 28 U.S.C. § 2255. Dkt. 1. Bell contends that his conviction should be vacated, set aside, or corrected on three separate grounds: (1) ineffectiveness of counsel; (2) abuse of discretion by the trial court in admitting improper evidence; and (3) prosecutorial misconduct resulting in a due process violation. Mot. at 1. Bell asks that the Court grant him an evidentiary hearing in order to address these allegations. *Id.* at 13.

## II.   LEGAL STANDARD FOR A 28 U.S.C. § 2255 MOTION

A motion to vacate, set aside, or correct sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief "[i]f the court finds that . . . there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(b). If the motion combined with the files and records of the case conclusively show that the prisoner is not entitled to relief, no evidentiary hearing on the issues is warranted. *See id.*

The standard of review of § 2255 petitions is "stringent" and the court "presumes earlier proceedings were correct." *United States v. Nelson*, 177 F. Supp.2d 1181, 1187 (D. Kan. 2001) (citation omitted). In a successful § 2255 motion, the "defendant must show a defect in the proceedings which resulted in a 'complete miscarriage of justice.'" *Id.* (quoting *Davis v. United States*, 417 U.S. 333, 346 (1974)). "[R]elief is not available merely because of error that may have justified reversal on direct appeal." *United States v. Frady*, 456 U.S. 152, 165 (1982); *United States v. Addonizio*, 442 U.S. 178, 184 (1979).

## III.   DISCUSSION

Petitioner Bell brings this Motion on three separate grounds. First, Bell alleges his counsel was so ineffective as to violate his Sixth Amendment rights. Second, Bell alleges that the

Court abused its discretion in admitting certain pieces of evidence, resulting in a violation of his Fifth Amendment Due Process rights.  Finally, Bell alleges that there was prosecutorial misconduct during his trial, again resulting in a violation of his Fifth Amendment Due Process rights.  The Court considers each of these allegations in turn, and hereby DENIES Bell's Motion.

### A.     INEFFECTIVENESS OF COUNSEL CLAIM

#### 1.     LEGAL STANDARD

The standard for evaluating a Sixth Amendment ineffective assistance of counsel claim is set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  Counsel's performance is constitutionally deficient when it "so undermine[s] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Strickland*, 466 U.S. at 686.  A defendant claiming ineffective assistance of counsel bears the burden of demonstrating that, under all the circumstances of his case: (1) "his counsel's performance was so deficient that it fell below an objective standard of reasonableness," and (2) his counsel's deficient performance prejudiced him, meaning "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Hensley v. Crist*, 67 F.3d 181, 184-85 (9th Cir. 1995) (citations omitted).

An after-the-fact examination of counsel's performance "is highly deferential and there is a strong presumption that counsel's conduct fell within the wide range of reasonable representation."

*United States v. Ferreira-Alameda*, 815 F.3d 1251, 1253 (9th Cir. 1987). "A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel." *People of the Territory of Guam v. Santos*, 741 F.2d 1167, 1169 (9th Cir. 1984) (citing *Strickland*, 466 U.S. at 690).

## 2. BELL HAS NOT SHOWN THAT HIS COUNSEL'S PERFORMANCE FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS

Bell's allegations do not show that his counsel's performance was objectively unreasonable. Bell's assertions regarding his counsel's ineffectiveness seem to revolve around three separate instances: the motion to suppress, the motions *in limine*, and his counsel's failure to call any witnesses in Bell's defense.

With respect to the motion to suppress and the motions *in limine*, it is unclear how Bell alleges his counsel's performance was deficient. Firstly, the bare fact that his counsel filed these motions shows competence on the part of his counsel. This was the appropriate strategy with which to contest the admissibility of the evidence against Bell. Further, per Bell's own allegations, his counsel argued the positions that Bell now asserts. His counsel vigorously contested the admissibility of most of the evidence against Bell on proper grounds and lost. Bell does not allege any error on the part of his

counsel in arguing these motions.³ Bell seems to argue that, because he lost on both motions, his counsel's performance was deficient. Ably arguing reasonable legal positions and losing, such as Bell's counsel did, does not "so undermine[] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland,* 466 U.S. at 686. Thus, Bell's position regarding these motions does not constitute an infectiveness of counsel claim.

With respect to the failure to call witnesses, Bell's allegation of ineffectiveness is more clear. Here Bell's argument seems to be that, because his counsel failed to call witnesses on his behalf, his counsel was objectively unreasonable. To buttress his claim, he references the closing arguments where his counsel asked the jury to consider why the government had not called Bell's passenger nor his girlfriend, after which the prosecutor reminded the jury that defense counsel had subpoena power. Bell points to this record as "clearly demonstrat[ing] by Bell's counsel's words at trial her own ineffectiveness." Mot. at 10. This record, however, does not demonstrate ineffectiveness of counsel.

The decision whether to call witnesses is a tactical one. "A tactical decision by counsel with which the defendant disagrees cannot form the basis of a claim of ineffective assistance of counsel." *Santos*, 741 F.2d at 1169 (citations omitted). Bell does not allege why his counsel failed to

---

³To the extent that Bell contends his counsel should have raised *Arizona v. Gant*, 556 U.S. 332 (2009) (a case that was decided a year and a half after Bell was sentenced), *Gant* does not apply to Bell's situation and thus his reliance on the case is inapposite. *Gant* involved a search incident to arrest; this was not the theory under which Bell's car was searched. *See United States v. Bell*, 337 F. App'x 663, 664-65 (9th Cir. 2009) (finding both consent and probable cause to search Bell's car).

call these witnesses. He does not claim that his counsel failed to conduct interviews or perform due diligence. Absent such allegations, the Court is left with any possible number of rational, legally defensible tactical reasons why Bell's counsel could have chosen not to call witnesses. This Court "is not free to engage in after-the-fact second-guessing of strategic decisions made by defense counsel." *United States v. Claiborne*, 870 F.2d 1463, 1468 (9th Cir. 1989). Bell's claim does not overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." *Strickland*, 466 U.S. at 689. Thus, because Bell has not met his substantial burden, he has not alleged a cognizable ineffectiveness of counsel claim.

### B.  BELL'S ABUSE OF DISCRETION CLAIMS ARE MOOT

Bell contends that the Court abused its discretion by allowing into evidence items seized in the search of his car as well as statements he made to police, including statements regarding his gang affiliation and marijuana use. Bell argued these positions at trial and lost. These exact issues were again raised by Bell on direct appeal and found meritless. *See United States v. Bell*, 337 F. App'x 663, 664-65 (9th Cir. 2009) (finding both consent and probable cause to search Bell's car as well as no abuse of discretion by this Court in admitting the contended items of evidence). "Issues raised at trial and considered on direct appeal are not subject to collateral attack under 28 U.S.C. § 2255." *Egger v. United States*, 509 F.2d 745, 748 (9th Cir. 1975); *see also United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as basis for a subsequent § 2255 petition.");

*United States v. Redd*, 759 F.2d 699, 701 (9th Cir. 1985).  Because Bell already raised these exact same issues on direct appeal, they cannot serve as the basis for his § 2255 Motion.

### C. PROSECUTORIAL MISCONDUCT CLAIM

#### 1. LEGAL STANDARD

Bell alleges that there was prosecutorial misconduct in his case because the prosecutor improperly vouched for the credibility of its star witness, Sgt. Derek Cook.  "Vouching consists of placing the prestige of the government behind a witness through personal assurances of the witness's veracity, or suggesting that information not presented to the jury supports the witness's testimony."  *United States v. Necoechea*, 986 F.2d 1273, 1276 (9th Cir. 1993).  There is "no bright-line rule about when vouching will result in reversal."  *Id.* at 1278.  Instead, the Court looks to several factors, including: (1) the form of vouching; (2) how much the vouching implies that the prosecutor has extra-record knowledge of or the capacity to monitor the witness's truthfulness; (3) any inference that the court is monitoring the witness's veracity; (4) the degree of personal opinion asserted; (5) the timing of the vouching; (6) the extent to which the witness's credibility was attacked; (7) the specificity and timing of a curative instruction; (8) the importance of the witness's testimony and the vouching to the case overall."  *Id.*  Where defense counsel did not object at trial, the court reviews for plain error, "balanc[ing] the seriousness of the vouching against the strength of the curative instruction and closeness of the case."  *Id.*

## 2. BELL HAS NOT ALLEGED A VALID PROSECUTORIAL MISCONDUCT CLAIM

The vouching Bell alleges does not rise to the level of prosecutorial misconduct. Bell claims that the prosecutor in his case improperly vouched for a witness by signing Cook's declarations. In pertinent part, Cook's declarations read: "Executed on behalf of declarant on [date], in Santa Ana, California, pursuant to telephonic authorization." Cook Decl. at 5. The declarations were then signed by the prosecutor "for" Derek Cook. *Id.* This is not a valid prosecutorial misconduct claim. This Court has been unable to find any case law indicating that a prosecutor's signing a declaration for a witness pursuant to telephonic authorization constitutes improper vouching. This is especially true when, as in this case, the declaration was only a supporting document and the declarant himself was available and subject to cross at all relevant proceedings.

An application of the *Necoechea* factors serves to strengthen the conclusion that there was no improper vouching. Six of the factors weigh heavily against Bell: (1) the form of vouching was not harmful, as it did not occur in front of a jury; (2) the vouching did not imply extra-record knowledge; (3) there was no implication that the court was monitoring Cook's truthfulness; (4) there was no personal opinion asserted by the prosecutor in signing for Cook; (5) the timing of the vouching especially militates against a finding of misconduct because it occurred before a jury was even selected; and (7) no curative instruction was necessary because the jury was never aware that the prosecutor had signed for Cook.

Only two factors weigh in favor of Bell: (6) Bell attacked Cook's credibility; and (8) Cook's testimony was critical to the case against Bell.

Balancing all of these factors, the Court finds only two that weigh in favor of Bell, while the others – especially (5) – weigh in favor of finding no improper vouching. Even assuming that signing a witness' declaration pursuant to telephonic authorization is a form of vouching, this is not enough to overcome the highly deferential plain error standard. Thus the totality of the circumstances shows that no improper vouching occurred.

## IV.   CONCLUSION

Bell has not shown a "complete miscarriage of justice" as is required in a § 2255 motion. *Davis*, 417 U.S. at 346. Thus, for the reasons stated above, the court DENIES Petitioner Bell's Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody Pursuant to 28 U.S.C. § 2255.

The Clerk shall serve this minute order on all parties to the action.